

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00769-CV

**IN THE INTEREST OF G.C.D.**, a Child

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-PA-00697
Honorable Charles E. Montemayor, Judge Presiding[1]

Opinion by:    Marialyn Barnard, Justice

Sitting:         Sandee Bryan Marion, Chief Justice
              Marialyn Barnard, Justice
              Rebeca C. Martinez, Justice

Delivered and Filed:  April 29, 2015

AFFIRMED

Appellant father ("Father") and appellant mother ("Mother") separately appeal the trial

court's order terminating their parental rights to their child, G.C.D.  On appeal, Father contends

the evidence is legally and factually insufficient to support the trial court's findings that he violated

subsections (D) and (E) of section 161.001(1) of the Texas Family Code, and that termination was

in the best interest of the child.  Mother does not challenge the sufficiency of the evidence to

support the trial court's findings under section 161.001(1) of the Texas Family Code, but contends

the evidence is legally and factually insufficient to support the trial court's finding that termination

was in the best interest of the child, G.C.D.  We affirm the trial court's order of termination.

---

[1] The Honorable Renee Yanta is the presiding judge of the 150th Judicial District Court of Bexar County, Texas.  The termination order was signed by Associate Judge, Charles E. Montemayor.

## BACKGROUND

Molly Henry, a caseworker with the Texas Department of Family and Protective Services ("the Department"), testified that in August 2012, the Department received a report that Mother was using heroin with her mother and brother in front of the child, who was approximately four-years-old. When the Department investigated, it found G.C.D. was malnourished. According to Ms. Henry, the family was first accepted into the Department's "Family Based" program. However, Father and Mother showed minimal compliance with the terms of the program. In addition, Father was arrested in early 2013 for a parole violation. Accordingly, the Department sought custody of the child. The court granted the Department's request for removal, and the child was placed in foster care.

Based on a motion filed by her parents, G.C.D returned home. However, in March 2013, when the parents showed a "lack of engagement in services," failing to allow the Department regular access to the child in the home and continuing their prior drug use, the Department filed a petition to terminate Father's and Mother's parental rights to G.C.D. The Department was awarded temporary managing conservatorship and G.C.D. was returned to foster care.

Ultimately, a termination hearing was held before the trial court. After the hearing, the trial court ordered Father's parental rights terminated, finding he knowingly placed or allowed G.C.D. to remain in conditions or surroundings that endangered her physical or emotional well-being, and he engaged in conduct or knowingly placed G.C.D. with someone who engaged in conduct that endangered her physical or emotional well-being. *See* TEX. FAM. CODE ANN. §§ 161.001(1)(D)–(E) (West 2014). The trial court also ordered Mother's parental rights terminated, finding she knowingly placed or allowed G.C.D. to remain in conditions or surroundings that endangered her physical or emotional well-being, engaged in conduct or knowingly placed G.C.D. with someone who engaged in conduct that endangered her physical or

emotional well-being, and had her parental rights terminated with respect to another child based on a finding that her conduct violated subsections (D) or (E). *See id.* §§ 161.001(1)(D)–(E), (M). The trial court also found termination of Father's and Mother's parental rights would be in the best interest of the child. *See id.* § 161.001(2). Thereafter, Father and Mother each perfected an appeal.

## ANALYSIS

On appeal, Father raises two issues. First, he challenges the legal and factual sufficiency of the evidence to support the trial court's finding that he violated subsections (D) and (E) of section 161.001(1) of the Texas Family Code ("the Code"). Second, he contends the evidence is legally and factually insufficient to support the trial court's finding that termination was in G.C.D.'s best interest. As noted above, Mother does not challenge the evidence with regard to the trial court's findings under section 161.001(1). Rather, she raises a single issue in which she contends the evidence is legally and factually insufficient to support the trial court's finding that termination was in the best interest of the child.

### *Standard of Review*

Under the Code, a court has authority to terminate a parent's rights to a child only upon proof by clear and convincing evidence that the parent committed an act prohibited by section 161.001(1) of the Code, and that termination is in the best interest of the child. *Id.* § 161.001(1), (2); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009); *In re E.A.G.*, 373 S.W.3d 129, 140 (Tex. App.—San Antonio 2012, pet. denied). The Family Code defines "clear and convincing evidence" as "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008); *see J.O.A.*, 283 S.W.3d at 344; *E.A.G.*, 373 S.W.3d at 140. This heightened standard of review is required because termination of a parent's rights to a child implicates due process in that it results in permanent and unalterable changes for the parent and the child. *E.A.G.*, 373 S.W.3d at 140.

Therefore, when reviewing a trial court's termination order, we must determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction that the grounds for termination were proven and that the termination was in the best interest of the child. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

With regard to legal sufficiency challenges in termination cases, we view the evidence in the light most favorable to the trial court's finding and judgment, and any disputed facts are resolved in favor of that court's findings, if a reasonable fact finder could have so resolved them. *Id.* We are required to disregard all evidence that a reasonable fact finder could have disbelieved, and we must consider undisputed evidence even if such evidence is contrary to the trial court's findings. *Id.* In summary, we consider evidence favorable to termination if a reasonable fact finder could, and we disregard contrary evidence unless a reasonable fact finder could not. *Id.*

We remain mindful that we may not weigh a witness's credibility because it depends on appearance and demeanor, and these are within the domain of the trier of fact. *Id.* Even when such issues are found in the appellate record, we must defer to the fact finder's reasonable resolutions. *Id*.

In a factual sufficiency review, we also give due deference to the trier of fact's findings, avoiding substituting our judgment for the fact finder. *In re H.R.M.,* 209 S.W.3d 105, 108 (Tex. 2006). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction [in the truth of its finding], then the evidence is factually insufficient." *Id.* (quoting *J.F.C.*, 96 S.W.3d at 266).

***Father — Engaged in Conduct or Knowingly Placed Child With Someone Who Engaged in Conduct that Endangered Child's Physical or Emotional Well-Being – § 161.001(E)***

As set out above, Father challenges the trial court's finding that he engaged in conduct or knowingly placed G.C.D. with someone who engaged in conduct that endangered her physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(1)(E). Father essentially argues that because he was incarcerated from the fall of 2010 — admittedly after G.C.D.'s birth — and for "all of 2011 and all of 2012," he could not have endangered G.C.D. or placed her with someone who engaged in conduct that endangered her physical or emotional well-being. We disagree.

The term "endanger," as used in section 161.001(1)(E), "means to expose to loss or injury, to jeopardize." *In re A.B.*, 412 S.W.3d 588, 599 (Tex. App.—Fort Worth 2013), *aff'd*, 437 S.W.3d 498 (Tex. 2014) (citing *Tex. Dept. of Human Servs. v. Boyd*, 727 S.W.3d 531, 533 (Tex. 1987)). The relevant question is whether there is evidence the endangerment — the loss, injury, or jeopardy — suffered by the child was the direct result of the parent's conduct, including acts, omissions, or failures to act. *Id.* Termination under subsection (E) cannot be based on a single act or omission; rather, the parent must have engaged "in a voluntary, deliberate, and conscious course of conduct." *Id.*

It is unnecessary that the parent's conduct be directed at the child or that the child actually suffer injury; rather, the specific danger to the child's physical or emotional well-being may be inferred from the parent's misconduct alone. *J.O.A.*, 283 S.W.3d at 345 (citing *Boyd*, 727 S.W.2d at 433); *A.B.*, 412 S.W.3d at 599 (same). When a parent's conduct subjects a child to a life of uncertainty or instability, the child's physical and emotional well-being is endangered. *A.B.*, 412 S.W.3d at 599. Moreover, the parent's conduct need not occur in the child's presence, and may include a parent's actions "before the child's birth and both before and after the child has been removed by the Department." *Walker v. Tex. Dept. of Family & Protective Servs.*, 312 S.W.3d

608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *see J.O.A.*, 283 S.W.3d at 345. And, as is particularly relevant here, "a parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct." *J.O.A.*, 283 S.W.3d at 345.

By his own admission, Father engaged in a course of conduct that resulted in multiple arrests and incarcerations, ultimately rendering him unable to parent G.C.D. and leaving her in the care of a mother who also used drugs. Prior to G.C.D.'s birth, Father was incarcerated from 1993 to 1996 — the record does not clearly explain the reason for incarceration, though at some point, Father pled no contest to a sex offense and there was some indication of family violence. He was then incarcerated again from 2000 through 2003 — the basis of his incarceration is unclear. He was arrested in 2006 for possession of cocaine and incarcerated. Father was then arrested in 2010 — after G.C.D.'s birth — for possession of heroin and cocaine. He was again incarcerated. Then, in 2013, he committed a parole violation — drug use, resulting in yet another incarceration, and he was not released until January 2014. The parole violation occurred when Father tested positive for cocaine when he was tested as part of the Department's service plan. According to Father, he has served, in his life, a total of eighteen years and eight months.

Although there is evidence that Father is presently drug-free — testing negative on several urinalysis tests — and is attending Narcotics Anonymous, that does not alter his past course of voluntary, deliberate conduct that resulted in multiple incarcerations. Moreover, the trial court could have determined that his lack of drug use after his January 2014 release through trial in August of the same year — a period of approximately seven months, was insufficient to overcome his past pattern and course of conduct with regard to drug possession and use. *See In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.) (opin. on reh'g) (holding that fact finder may infer from past conduct endangering child's well-being that similar conduct will recur if child is returned to parent). Although his drug possession and use, as well as other behaviors

resulting in incarceration, was not directed at G.C.D., his conduct obviously subjected her to a life of uncertainty and instability in his absence, endangering her physical and emotional well-being. *See A.B.*, 412 S.W.3d at 599. We can infer the danger to G.C.D. from Father's continuous pattern of drug use, resulting in his absence from her life. *Id.* (citing *Boyd*, 727 S.W.2d at 533).

Based on the evidence of Father's pattern of drug use and other criminal behavior, resulting in multiple incarcerations spanning more than eighteen years, we hold the trial court could have reasonably formed a firm belief or conviction that Father engaged in conduct that endangered G.C.D.'s physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(1)(E); *J.P.B.*, 180 S.W.3d at 573. We therefore overrule this challenge to the sufficiency of the trial court's finding under section 161.001(1)(E).

### *Father — Knowingly Placed or Allowed Child to Remain in Conditions or Surroundings that Endangered Child's Physical or Emotional Well-Being – § 161.001(D)*

Father also contends the evidence is insufficient to establish he knowing placed G.C.D. or allowed her to remain in conditions or surroundings that endangered her physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(1)(D). He again contends his incarceration precludes the trial court's finding under section 161.001(1)(D).

As stated by the supreme court, "Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination," assuming there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Thus, to succeed on appeal, an appellant must establish all of the grounds upon which the trial court based its termination order lack sufficient evidence or that there is insufficient evidence to support the best interests finding. *See id.* at 363. Here, we have determined the evidence is legally and factually sufficient to support the trial court's decision to terminate Father's parental rights pursuant to section 161.001(1)(E), and as we explain below, the evidence is also sufficient to support the trial

court's best interest finding. Accordingly, we need not address whether the evidence was sufficient to support the trial court's finding under section 161.001(1)(D). *See id.*

### *Father and Mother — Best Interests*

Both Father and Mother contend the evidence is legally and factually insufficient to support the trial court's finding that termination was in the best interest of the child. Admittedly, courts must accept the strong presumption that maintaining the parent-child relationship is in a child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, we also presume that permanently placing a child in a safe place in a timely manner is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a) (West 2014). In determining whether a parent is willing and able to provide the child with a safe environment, the court should consider the factors set out in section 263.307(b), which include: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department or other agency; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills;

and (13) whether an adequate social support system consisting of an extended family and friends is available to the child.  *Id.* § 263.307(b); *see In re A.S.*, No. 04-14-00505-CV, 2014 WL 5839256, at *2 (Tex. App.—San Antonio Nov. 12, 2014, pet. denied) (mem. op.).

Although a best interest finding does not require proof of any particular, unique set of factors, *see In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied), courts may take into account the factors set forth by the Texas Supreme Court in *Holley v. Adams*: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent.  544 S.W.2d 367, 371–72 (Tex. 1976).  These considerations, i.e., "the *Holley* factors," are neither all-encompassing nor does a court have to find evidence of each factor before terminating the parent-child relationship.  *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).  Thus, lack of evidence as to some of the *Holley* factors does not preclude a trier of fact from reasonably forming a strong conviction or belief that termination is in a child's best interest.  *Id.*

Additionally, although proof of acts or omissions under section 161.001(1) of the Texas Family Code does not relieve the Department from proving the best interest of the child, the same evidence may be probative of both issues.  *Id.* at 28 (citing *Holley*, 544 S.W.2d at 370; *Wiley v. Spratlan*, 543 S.W.2d 349, 351 (Tex. 1976)).  Moreover, in conducting a best interest analysis, a court may consider circumstantial evidence, subjective factors, and the totality of the evidence, in addition to direct evidence.  *A.S.*, 2014 WL 5839256, at *2 (citing *In re E.D.*, 419 S.W.3d 615,

620 (Tex. App.—San Antonio 2013, pet. denied)). Finally, a fact finder may judge a parent's future conduct by his or her past conduct in determining whether termination of the parent-child relationship is in the best interest of the child. *Id.*

The Department's first witness was Molly Henry, the Department case worker. Ms. Henry admitted she was not assigned to the case until March 2014, but stated she had reviewed the entire file. Ms. Henry began by testifying regarding the reason the family became involved with the Department. As set out in the background portion of this opinion, in 2012 the Department received a report that Mother was using heroin with her mother and brother in front of then four-year-old G.C.D. *See* TEX. FAM. CODE ANN. § 263.307(b)(8) (history of substance abuse by child's family); *Holley*, 544 S.W.2d at 371–72. Upon the initial visit to the home, four-year-old G.C.D. appeared malnourished. *See* TEX. FAM. CODE ANN. § 263.307(b)(1) (child's age and physical vulnerabilities); *Holley*, 544 S.W.2d at 371–72. At first, the Department simply placed the family in its "Family Based" program. However, due to "minimal compliance from both parents[,]" in 2013, the Department filed a petition and the child was removed from the home. *See* TEX. FAM. CODE ANN. § 263.307(b)(10) (willingness of child's family to accept and complete counseling services and cooperate with and facilitate agency's supervision). After a subsequent hearing, G.C.D. was returned to the home. Once again, however, the parents failed to engage in the services required by the Department and the child was again removed and placed into foster care. *See id.* According to Ms. Henry, the lack of engagement was based on the parents' refusal to allow the Department "regular and constant access" to the child in the home. *See id.* Additionally, Father tested positive for cocaine. *See* TEX. FAM. CODE ANN. § 263.307(b)(8); *Holley*, 544 S.W.2d at 371–72. This time, the trial court granted the Department temporary managing conservatorship of G.C.D.

After the trial court granted temporary managing conservatorship to the Department, the Department created a plan of service for each parent for purposes of reunification. Ms. Henry testified that since early 2013, Father and Mother completed "some of their services." Specifically, Mother completed her drug assessment treatment through Lifetime Recovery in May 2014 and provided a certificate establishing completion. *See* TEX. FAM. CODE ANN. § 263.307(b)(10), (11) (willingness of child's family to complete counseling services; willingness of child's family to effect positive personal changes within reasonable time). Ms. Henry stated Mother tested negative on all drug tests administered by the drug court and the Department. *See id.* Mother has also been seeing a physician with regard to maintaining her sobriety. However, Ms. Henry stated that although Mother and Father claimed to have attended the required Narcotics Anonymous meetings, neither parent provided proof of attendance, and neither parent has provided her with the name of a Narcotics Anonymous sponsor, which was a service plan requirement. *See id.* Mother admitted she knew she was required to have a sponsor, but admitted she does not have a sponsor other than "my Lord." *See id.* Father testified he has two sponsors and provided their names. *See id.* At trial, Father admitted into evidence "sign in" sheets from Narcotics Anonymous meetings, showing he had attended meetings over the past two years. *See id.*

Mother also attended individual counseling for more than a year, and Ms. Henry believed that counseling was ongoing. *See id.* Mother admitted missing two sessions. *See id.* Mother also attended parenting classes, but Ms. Henry had not spoken to her class supervisors. However, Kristin Milligan, a parent educator and case manager with BCFS Health and Human Services, testified Father and Mother attended her classes in July and August of 2014. *See id.* She advised that they attended six of eight classes and needed to attend two make-up classes to graduate from the program. *See id.* As of the date of her testimony — October 8, 2014 — neither parent had

made up the classes. *See id.* She said that both parents participated during classes and completed assignments. *See id.*

As to Father, Ms. Henry testified he began individual counseling in April or May of 2014, but has not completed it. *See id.* Ms. Henry acknowledged Father was unable to begin counseling until he was released from jail in January 2014. *See Holley*, 544 S.W.2d at 371–72. Ms. Henry stated Father attended some classes while he was incarcerated and provided documentation to that effect. *See* TEX. FAM. CODE ANN. § 263.307(b)(10), (11). Father has also been seeing the same physician Mother sees with regard to maintaining his sobriety. *See id.* According to Father, this doctor prescribes "Suboxone,"[2] which Father contends allows him and Mother to stay "on track" and maintain their sobriety. Father completed his parenting classes, but has yet to complete a domestic violence course. *See id.* Both parents completed their "psychologicals," and both parents attended their bi-monthly visits with G.C.D. up until the month before trial when the visits were terminated.[3] *See id.* Ms. Henry concluded by stating Father had completed his service plan tasks except for stable housing and employment — contrary to her prior statement that Father had not completed individual counseling. *See id.*

With regard to housing, Ms. Henry stated the last she knew, Father and Mother had been living with relatives or in a hotel. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. She believed the parents, who also worked at the hotel, resided there for approximately six months. Ms. Henry stated the parents intended to stay in the hotel until they were advised that

---

[2] "Suboxone" is a medication approved by the U.S. Food and Drug Administration for treatment of opiate dependence. U.S. FOOD & DRUG ADMINISTRATION, SUBUTEX AND SUBOXONE QUESTIONS AND ANSWERS http://www.fda.gov/Drugs/DrugSafety/PostmarketDrugSafetyInformationforPatientsandProviders/ucm191523.htm (last updated 06/13/2014).

[3] The reason for terminating visitation during the month before trial was discussed at the end of the first day of the trial. Attorneys for Father and Mother suggested the visits were terminated at the request of the Department, but the Department attorneys denied this, advising that the trial court sua sponte ordered the visits terminated "unless therapeutically recommended" because trial in the matter was again delayed.

the Department did not consider it suitable housing for G.C.D. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. Accordingly, they quit their hotel jobs and moved in with family. Ms. Henry admitted that Mother advised her on the first day of trial — August 11, 2014 — that she and Father moved into a "house" in July 2014, but Ms. Henry testified she had not seen the house, and Mother did not provide her with a copy of a lease or title in support of her claim.[4] *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. When trial resumed on October 8, 2014, Ms. Henry stated she had been unable to verify that the parents had obtained suitable housing, but admitted she had not attempted to view the apartment. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. Ms. Henry concluded they failed to obtain stable housing because even if they were now in a house or apartment, they had only been there a month and this would be approximately their fourth residence since March 2013. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72.

Mother contradicted Ms. Henry's testimony regarding housing, stating she had provided the Department with a copy of the lease. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. She described the apartment as having three bedrooms, and advised they had been in the residence since July — a month before trial began. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. Mother testified she and Father live in the apartment and it is suitable for G.C.D., providing her with her own bedroom and a place to play. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. Father stated the apartment is in a quiet neighborhood in central San Antonio. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72.

---

[4] On cross-examination, Ms. Henry was shown a lease signed by Mother and dated July 1, 2014. Although the lease was offered as an exhibit, the trial court withheld its ruling on its admissibility. The record reflects the lease was never admitted into evidence and it is not part of the appellate record.

Ms. Henry also stated the parents failed to obtain stable employment, but admits they relinquished their hotel jobs because of the Department's view that the hotel did not constitute suitable housing for the child; their jobs required they live on-site. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. Additionally, Ms. Henry acknowledged that Father and Mother receive "SSI disability" payments. Father's payments began in 2010, after he suffered injuries in a car accident in 2007. His disability renders him unable to engage in certain types of work, limiting his ability to find a job. Mother's disability payments began in 2007, and are for depression and anxiety. Mother testified she "used to hear my kids," the ones she "lost . . . crying for me." Mother stated her depression stems from the removal of G.C.D. and that if the child is returned, her mental issues will be lessened. Father and Mother admitted that although they are receiving disability payments, they are permitted to work without losing those payments as long as they work no more than twenty or twenty-five hours per week. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72.

Ms. Henry said Father has told her that he has been working with state agencies to find employment. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. Specifically, he advised that he is trying to obtain a Commercial Driver's License. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. Father testified he is part of the "Ticket to Work Program," which will allow him to keep his insurance and disability payments for three years until he is able to fully support himself. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. He states he is going to receive schooling and job training. *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72. At this time, the plan is for him to obtain work at a trucking company. However, Father admitted he has not continued to pursue this plan because of "everything that's going on around me right now, the case at hand, the Department limitations with the, you know, visits." *See* TEX. FAM. CODE ANN.

§ 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72.  Father explained that he might be required to go outside Texas for training, so he decided not to leave Mother while the termination matter was on-going.

Ms. Henry acknowledged that receiving disability payments was not a bar to returning G.C.D., but Ms. Henry said it was "still a major concern" because the amount of disability payments Father and Mother receive are insufficient to care for themselves and a child.  *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72.  During the second day of trial, Ms. Henry advised she had still not received any documentation to establish that either parent had obtained employment to supplement or supplant their disability payments.  *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *Holley*, 544 S.W.2d at 371–72.

Regarding visitation with G.C.D., Ms. Henry testified the visits were "okay."  Although Father and Mother were often late, "during the visit [G.C.D.] did okay."  During the visits, G.C.D. enjoys herself and seems happy.  However, after the visits she "would have issues."  After one visit, Ms. Henry took her back to her foster home and G.C.D., who is normally very talkative and outgoing, was "completely quiet."  When Ms. Henry inquired, G.C.D. said she was "confused" and did not "understand why she has to go through this."  Ms. Henry interpreted G.C.D.'s statements to mean she was confused with regard to going back and forth between her foster mother and visits with Mother.  Yet, on cross examination, Ms. Henry acknowledged G.C.D.'s quiet nature after visits could be merely a normal reaction to leaving a parent after an enjoyable visit.  Further, Ms. Henry admitted G.C.D. was bonded with her Mother and her confusion could stem from only seeing her two hours each month.

Ms. Henry was questioned about any previous involvement by the parents with the Department.  She testified this was not the first time the Department was involved with Father and Mother.  *See* TEX. FAM. CODE ANN. § 263.307(b)(2), (8), (11), (12) (frequency and nature of out-

of-home-placements; history of substance abuse; willingness of child's family to effect positive personal changes within reasonable time); *Holley*, 544 S.W.2d at 371–72; *see also A.S.*, 2014 WL 5839256, at *2 (holding fact finder may judge parent's future conduct by his or her past conduct in determining whether termination is in best interest of child). In fact, she stated "[t]here are ten previous investigations with other children" beginning in October 1998. Ms. Henry later corrected herself on cross-examination, stating she had miscounted by including investigations where Mother was actually a sibling, and in reality there were actually two prior investigations involving Mother's children. However, Ms. Henry stated she knew of five other children belonging either to Mother or the couple and that with regard to each of the five, Father's and/or Mother's parental rights were either relinquished or terminated. *See* TEX. FAM. CODE ANN. § 263.307(b)(2), (8), (11), (12); *Holley*, 544 S.W.2d at 371–72; *see also A.S.*, 2014 WL 5839256, at *2. She believed that the parental rights of each and every child belonging to Father and Mother were at some point terminated or relinquished. *See* TEX. FAM. CODE ANN. § 263.307(b)(2), (8), (11), (12); *Holley*, 544 S.W.2d at 371–72; *see also A.S.*, 2014 WL 5839256, at *2. And, as noted above, one of the grounds upon which Mother's parental rights to G.C.D. were terminated — which she does not contest on appeal — was that she had her parental rights terminated with respect to another child based on a finding that her conduct violated subsections (D) or (E). *See* TEX. FAM. CODE ANN. §§ 161.001(1)(D)–(E), (M); *see also A.S.*, 2014 WL 5839256, at *2. Ms. Henry stated the prior referrals, terminations, and relinquishments caused the Department concern regarding the parents' abilities to parent any child. *See* TEX. FAM. CODE ANN. § 263.307(b)(2), (8), (11), (12); *Holley*, 544 S.W.2d at 371–72; *see also A.S.*, 2014 WL 5839256, at *2. Ms. Henry explained the concern was based on an obvious failure of the parents to make or maintain changes in their behavior or the long-term. *See* TEX. FAM. CODE ANN. § 263.307(b)(2), (8), (11), (12); *Holley*, 544 S.W.2d at 371–72; *see also A.S.*, 2014 WL 5839256, at *2. As she stated, "it seems like the same issues have

continued to happen year after year." *See* TEX. FAM. CODE ANN. § 263.307(b)(2), (8), (11), (12); *Holley*, 544 S.W.2d at 371–72; *see also A.S.*, 2014 WL 5839256, at \*2.

Mother admitted that with regard to her other children, the Department became involved because she was using cocaine. *See* TEX. FAM. CODE ANN. § 263.307(b)(2), (8), (11), (12); *Holley*, 544 S.W.2d at 371–72; *see also A.S.*, 2014 WL 5839256, at \*2. In 2004, a son was removed because he tested positive at birth for cocaine. *See* TEX. FAM. CODE ANN. § 263.307(b)(2), (8), (11), (12); *Holley*, 544 S.W.2d at 371–72; *see also A.S.*, 2014 WL 5839256, at \*2. However, Mother claims she still has a relationship with her other children because they were placed in the custody of family members. Mother testified she has tried over the years to improve and "stay clean," and she has now been drug-free for almost a year — except for those medications specifically prescribed for her depression and anxiety. She claimed the last time she used heroin was in October 2013. *See* TEX. FAM. CODE ANN. § 263.307(b)(11). She also stated that she continues to attend counseling even though she has completed the term as set out in her service plan. *See id.* She said she intends to continue counseling and to take G.C.D. with her. *See id.* Mother admitted she "made a mistake," but stated she is not going to give up.

Mother also called one of her adult children to testify on her behalf. Hugo Ortega, who was nineteen at the time of trial, testified Mother's parental rights as to him were terminated when he was a child — he knows Father as a step-father. He stated the termination caused him confusion and he wishes she had been part of his life when he was growing up. He now maintains a relationship with Mother, seeing her three times a week, and she is very supportive. He testified he will be there for her, as well, if she needs him. When asked about her drug use, he stated he only knows what the Department has alleged in the current termination case. However, he believes Mother and Father will be able to care for G.C.D.

Like Mother, Father testified he has made mistakes, but this time he intends to stay drug-free; he states he is a "changed man." Father, as noted above, admitted his prior drug possession and use, resulting in multiple arrests and incarcerations. Specifically, he was arrested in 2006, 2010, and 2013 for possession of narcotics — or a parole violations — and incarcerated. *See* TEX. FAM. CODE ANN. § 263.307(b)(8), (11); *Holley*, 544 S.W.2d at 371–72; *see also A.S.*, 2014 WL 5839256, at *2. There was also some testimony that Father has previous convictions for family violence and for some offense that qualified him as a sex offender, and had parole violations for refusing to attend a sex offender class. *See* TEX. FAM. CODE ANN. § 263.307(b)(7) (history of abusive or assaultive conduct by child's family member). Father denied committing the offense relating to his status as a sex offender, stating he pled no contest because he was "ignorant to the law back then." Because he denied committing the offense, he refused to attend the class.

Father admitted attending drug treatment programs during his prior incarcerations, but stated he was young and seemed to imply this is why he was unsuccessful. *See Holly*, 544 S.W.2d at 371–72 (excuses for parent's acts or omissions). He testified Mother — who has been his common law wife for nineteen years — is now drug-free and now, at the age of forty-two, he wants his children to know he is doing the right thing. He stated he and Mother are "good parents," and if G.C.D. is returned to them, he intends to enroll her in school, make sure the bills are paid and food is on the table. *See Holley*, 544 S.W.2d at 371–72. He also stated that if he leaves Texas for training or work, he will make sure a family member is there to help Mother. *See* TEX. FAM. CODE ANN. § 263.307(b)(13) (existence of adequate social support system of extended family). Father says he has "coping" and "thinking" skills now as well as family and outside support from counselors and group sessions. *See* TEX. FAM. CODE ANN. § 263.307(b)(11).

Ms. Henry opined that based on her involvement in the current case, Father and Mother do not have the ability to provide a safe and stable home for G.C.D. *See Holley*, 544 S.W.2d at 371–

72 (stability of home or proposed placement). She stated the Department had worked with both parents to offer them a chance at reunification, but the efforts have been unsuccessful. Ms. Henry testified that in her opinion, each parent had service plan tasks that still needed to be completed. *See* TEX. FAM. CODE ANN. § 263.307(b)(11). Ms. Henry testified it would be in G.C.D.'s best interest if the parental rights of both parents were terminated. G.C.D. is in a foster home that provides a suitable long-term placement. *See Holley*, 544 S.W.2d at 371–72 (stability of home or proposed placement). The foster home is a potential adoptive home, and G.C.D. is "safe and happy and healthy." *See id.* Ms. Henry stated the current placement provides G.C.D. a "great, great home environment" where all of her needs are met and where she is "very well loved." *See id.*

Admittedly, there is evidence that recently, G.C.D.'s parents have made efforts, with some success, toward resolving their long-standing drug issues, improving their coping skills, and making positive changes with regard to home and job stability. And, unquestionably, both parents manifested a desire to change in order to reunify with their child. Despite this, we hold there is sufficient evidence that would have allowed the trial court to have reasonably formed a firm belief or conviction that termination was in the best interests of the children. *See J.P.B.*, 180 S.W.3d at 573.

There is evidence both parents committed acts or omissions under section 161.001(1). *See C.H.*, 89 S.W.3d at 28. As detailed above, Father's continuous pattern of drug use and incarceration endangered G.C.D.'s physical and mental well-being. *See* TEX. FAM. CODE ANN. §§ 161.001(1)(D)–(E), Mother did not contest the trial court's finding that she knowingly placed or allowed G.C.D. to remain in conditions or surroundings that endangered her physical or emotional well-being, engaged in conduct or knowingly placed G.C.D. with someone who engaged in conduct that endangered her physical or emotional well-being, and had her parental rights terminated with respect to another child based on a finding that her conduct violated

subsections (D) or (E).  *See id.* §§ 161.001(1)(D)–(E), (M).  Moreover, although both parents did much toward completion of their service plans — there were still existing tasks to be completed, including parenting classes.  Moreover, many of the tasks that were completed were not completed within a reasonable time given the parents' long-term drug use and involvement with the Department.  *See* TEX. FAM. CODE ANN. § 263.307(b)(11); *C.H.,* 89 S.W.3d at 28.  Father and Mother have long histories of drug use — cocaine and more recently, heroin, and Father has been incarcerated for almost nineteen of his forty-two years.  *See* TEX. FAM. CODE ANN. § 263.307(b)(8), (11); *C.H.,* 89 S.W.3d at 28.  There was also some evidence of domestic violence. *See* TEX. FAM. CODE ANN. § 263.307(b)(7).

The evidence established both parents have a long history with the Department, losing custody of all of their other children by termination or relinquishment.  *See* TEX. FAM. CODE ANN. § 263.307(b)(2), (11); *Holley*, 544 S.W.2d at 371–72.  The record shows G.C.D. was only four-years-old when the Department became involved, which bears upon her best interest.  *See* TEX. FAM. CODE ANN. § 263.307(b)(1).  She has been in foster care for nearly one-third of her young life, and is in a potential adoptive home where she is happy and well-cared for.  *See Holley*, 544 S.W.2d at 371–72.  The case worker testified the child seemed confused about being with her foster mother and then seeing her biological parents.  The trial court could have determined her parents' long-term instability — lifestyle, housing, and employment — could only add to that confusion.  Finally, the trial court could have determined that the parents' long-term behavior was more predictive of their future behavior than their recent behavior.  *See A.S.*, 2014 WL 5839256, at *2.

Recognizing that in conducting a best interest analysis, the trial court was permitted to consider circumstantial evidence, subjective factors, and the totality of the evidence, in addition to the direct evidence presented, we hold the trial court was within its discretion in finding

termination of both Father's and Mother's parental rights would be in G.C.D.'s best interest. *See id.* In other words, the evidence is such that the trial court could have reasonably formed a firm belief or conviction that termination was in her best interest. *See J.P.B.*, 180 S.W.3d at 573.

## CONCLUSION

We hold the evidence is legally and factually sufficient for trial court to have found that Father, as a result of his pattern of drug use and other criminal behavior, resulting in multiple incarcerations spanning more than eighteen years, engaged in conduct that endangered G.C.D.'s physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(1)(E); *J.P.B.*, 180 S.W.3d at 573. This, coupled with our best interest holding, allows us to forego review of Father's challenge to the sufficiency of the evidence relating to the finding that he knowingly placed G.C.D. or allowed her to remain in conditions or surroundings that endangered her physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(1)(D). Mother did not challenge the evidence regarding the grounds for termination, but both parents challenged the trial court's best interest finding. We likewise hold the evidence was legally and factually sufficient to allow the trial court to find termination of both Father's and Mother's parental rights was in the best interest of G.C.D. Accordingly, we overrule Father's and Mother's issues and affirm the trial court's termination order.

Marialyn Barnard, Justice